IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

LYNDA DENISE FOWLER                                                              PLAINTIFF

V.                                        CIVIL ACTION NO.
                                          5:08-CV-5173

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                 DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Lynda Denise Fowler, brings this action pursuant to 42 U.S.C. §405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claims for disability and disability insurance benefits under Title II of

the Social Security Act (the Act) and Supplemental Security Income under Title XVI of the Act.  In

this judicial review, the court must determine whether there is substantial evidence in the

administrative record to support the Commissioner's decision.  See U.S.C. §405(g).

**Procedural Background**

Plaintiff protectively filed her application for a period of disability and disability insurance

benefits on August 11, 2006 (Tr. 90).  Plaintiff also protectively filed an application for

Supplemental Social Security Income on August 11, 2006. (Tr. 90).  The application alleged a

disability onset date of October 15, 2001.  (Tr. 90).  The Social Security Administration denied the

claim initially and upon reconsideration.  (Tr. 51-57, 60-63).  Pursuant to Plaintiff's request, a

hearing was held on October 24, 2007, before Administrative Law Judge William M. Manico (ALJ),

where Plaintiff and David A. O'Neal, a Vocational Expert (VE), appeared and testified.  (Tr. 6-32).

On March 20, 2008, the ALJ entered his decision denying Plaintiff's request for a determination of

disability.  (Tr. 40-50).  Plaintiff's request for a review of the hearing was denied by the Appeals Council on June 12, 2008.  (Tr. 1-3).

In his written decision, the ALJ found that the Plaintiff: meets the insured status requirements of the Social Security Act through December 31, 2010; has not engaged in substantial gainful activity since October 15, 2001, the alleged onset date; has the following severe impairments: osteoarthritis, morbid obesity and depression; does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments; has the residual functional capacity (RFC) to perform sedentary work except she is only able to perform work where interpersonal contact is incidental to the work performed (e.g. assembly work), the complexity of tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct and concrete; is unable to perform any past relevant work; was born on July 6, 1961 and was 40 years old, which is defined as a younger individual age 18-44,  on the alleged disability onset date; has at least a high school education and is able to communicate in English; is not disabled whether or not the claimant has transferable job skills; and, considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform. (Tr. 40-50).

In her appeal of the ALJ's findings and conclusions, Plaintiff contends that the ALJ did not base his determination of her RFC on all of the relevant evidence in the record.  For the reasons stated, below, the court recommends that the ALJ's decision be affirmed.

**Evidence Presented**

Plaintiff completed the 11th grade in high school.[1]  (Tr. 9).  She is 5'7" and, at the time of the

---

[1]Plaintiff did receive her GED (Tr. 23).

hearing, weighed 356 pounds. (Tr. 15).  At the hearing, Plaintiff stated that her back was the main issue (Tr. 12) but shortly thereafter said that her back and feet were the primary source of her inability to work and that she has osteoarthritis and degenerative joint disease in her knees, ankles and hips. (Tr. 13).  On May 12, 1994, Dr. Bernard L. Fioravanti performed a lumbar spine MRI on Plaintiff, which revealed severe transligamentous L4-5 disc herniation. (Tr. 254).  Another MRI was performed on June 22, 1994, by Dr. Geoffrey A. Day, which revealed a severe left paracentral to parasagittal disc herniation at L4-5 with encroachment upon the thecal sac and exiting left L5 neural root.  He also found that persistent sequestration of the disc posterior to the inferior aspect of the left L4 vertebral body persists. (Tr. 252).  Plaintiff testified that she has not had surgery for this because the doctor said it was near all the major nerves. (T. 13).  Dr. David Tucker is her treating physician and has been treating her for at least 15 years. (Tr. 9).

In an undated[2] Pre-Hearing Memorandum prepared by Plaintiff's attorney, Ray B. Schlegel, the reason given for Plaintiff's disability is: Osteoarthritis and severe degenerative joint and disc disease with radiculopathy in legs and difficulty controlling bladder; major depressive disorder; chronic pain syndrome; and morbid obesity. (Tr. 167).

On October 15, 2001, Plaintiff was "let go" from employment by Peterson Farms. (Tr. 9).  She stated that she believed they let her go because she was missing too much time, although they told her it was because she was using their PC to copy files for her home. (Tr. 9).  She said that she probably could have fought them over it, "but it wasn't worth it." (Tr. 25).  Plaintiff also testified that she left the job because it was getting very hard to continue to do that job. (Tr. 10).  Plaintiff takes Hydrocodone for her back pain and has been taking it for over 5 years. (Tr. 10).  She stated

---

[2]It appears that this document was faxed on October 17, 2007.

that the Hydrocodone makes her sleepy and sometimes dizzy.  (Tr. 17).   In addition to her physical condition, Plaintiff states that she has also been diagnosed with depression.  (Tr. 19).  She also takes generics for Feldene and Prozac - she has been taking Prozac since 1997 with no side effects.  (Tr. 10).

At the hearing, Plaintiff testified that she began caring for her mother in 2003.  (Tr. 13). Plaintiff also cares for her two children, ages 10 and 8, as well. (Tr. 137-138).  She prepares meals every breakfast and every evening. (Tr. 139).  She does any personal business for her mother such as paying her bills and bookwork.  (Tr. 137).  She can do laundry and vacuum if her back is ok.  (Tr. 139).  She drives a car, goes for groceries weekly, goes to church two to three times a month, and uses a cane when her back is out and a back brace when she is doing house work.  (Tr. 140-143). She states that sitting for too long causes pain in her lower back, that stair climbing, bending or stooping also irritates her back.  (Tr. 144).  Kneeling and squatting is hard on her knees and back and reaching hurts if it is above her head or shoulders or far away from her. (Tr. 144).

On May 20, 2005, Plaintiff saw Dr. Tucker for a prescription refill and his impression was "Hypertension; Degenerative Joint Disease; Chronic Back Pain; Sinusistis."  (Tr. 205).  On March 29, 2006, Dr. Frank Webb saw Plaintiff for a puncture wound to the left thumb and she also requested a refill of her medicines. (Tr. 197).  In his Plan, Dr. Webb noted: "My weight loss program was discussed today with her but she said she was not interested."  (Tr. 197).  In a report dated August 11, 2006, a Social Security Administration Interviewer, L. Tomayko, noted that Plaintiff was an obese lady who walked slowly and stiffly and seemed to have trouble getting up and down from the chair.  (Tr. 116).

A general physical examination was conducted on September 19, 2006, at the request of the

Social Security Administration.  The diagnosis was OA RLE Radiculopathy; GERD; and morbid obesity.  (Tr. 182).  The following limitations were noted: "Pt. Can handle, finger, see, hear & speak" and the Plaintiff's ability to walk, stand and sit were moderately limited and her ability to lift and carry were severely limited.  (Tr. 182).

The Physical Residual Functional Capacity Assessment dated September 26, 2006, prepared by Bill F. Payne, reflects that the primary diagnosis is osteoarthritis and the secondary diagnosis is morbid obesity.  (Tr. 185).  It was found that plaintiff could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, stand and/or walk (with normal breaks) at least 2 hours in an 8-hour workday, sit (with normal breaks) about 6 hours in an 8 hour workday, sit (with normal breaks) about 6 hours in an 8 hour workday, and push and/or pull was unlimited.  (Tr. 186).  No postural limitations, no manipulative limitations, no visual limitations, no communicative limitations, and no environmental limitations were noted.  (Tr. 187-189).  Mr. Payne found that the "MER supports a SEDENTARY RFC."  (Tr. 192).

On January 5, 2007, Plaintiff presented herself to Dr. Tucker for evaluation and physical assessment and to have Dr. Tucker fill out disability forms.  (Tr. 193).  Dr. Tucker stated, "She does have a lot of back pain, a lot of degenerative joint disease of the back, as well as the knees, hips, ankles, the main part being her back at this time."  (Tr. 193).

On March 2, 2007, Denise LaGrand, Psy.D., conducted a Social Security/Disability Evaluation/Mental Status/Diagnostic Examination.  (Tr. 224-229).  She noted that Plaintiff did not have any noticeable physical handicaps; her posture and gait were normal, her motor activity was normal and she did not appear to be in any pain.  (Tr. 226).  Dr. LaGrand concluded that based on Plaintiff's overall estimated IQ, ability to perform numerical operations, current substance use and

her overall functioning and judgment, she should be able to handle her own funds without assistance. (Tr. 229).

On March 15, 2007, a Mental Residual Functional Capacity assessment was conducted by Medical Consultant Brad F. Williams, Ph.D. (Tr. 231-233).  He concluded that Plaintiff was able to perform work where interpersonal contact is incidental to the work performed, e.g. assembly work; complexity of the task is learned and performed by rote, with few variables, little judgment and where supervision required is simple, direct and concrete.  (Tr. 233).  He rated Plaintiff's functional limitations as: moderate restriction of activities of daily living; moderate difficulties in maintaining social functioning; mild difficulty in maintaining concentration, persistence or pace; no episodes of decompensation, each of extended duration.  (Tr. 245).  He found that the evidence does not establish the presence of the "C" criteria.  (Tr. 246).  He found Plaintiff's thoughts to be organized, logical and goal-directed and that she was able to stay focused on the exam.  (Tr. 247).  He concluded: "She should be able to perform at least unskilled work."  (Tr. 247).

**<u>Applicable Law</u>**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  <u>Ramirez v. Barnhart</u>, 292 F. 3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  <u>Edwards v. Barnhart</u>, 314 F. 3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided

-6-

the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D).  A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits; (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  See McCoy v. Schwieker, 683 F.2d 1138, 1141-42 (8th Cir.

-7-

1982);  20 C.F.R. §416.920.

**Discussion**

**A.  Osteoarthritis**

Plaintiff alleges she has been dealing with back pain since the 1990's.  Although the two MRI's taken in 1994 show central herniation with significant extension into the left intervertebral foramen, Plaintiff worked until October 15, 2001, at Peterson Farms as a PC support person, which, according to her own testimony, required her to give lessons on software and set up the computers, printers and technical equipment.  (Tr. 25).  Plaintiff testified that at that job, she was on her feet a lot and carried a lot.  (Tr. 24).  Although Plaintiff indicated that the onset of her disability occurred on the date she was terminated from her employment - October 15, 2001 - the court agrees with the ALJ that it seems remarkable that her disability just happened to coincide with this event.  (Tr. 46).  As was also addressed by the ALJ, there are very few medical records in evidence to support a finding that Plaintiff has sought medical treatment, other than pain medication, to address her back issues.  In fact, for the most part, the records indicate that Plaintiff's office visits in 2002, 2005 and 2006, in addition to seeking prescription refills,  related to other complaints, i.e. bronchitis, sinusitis, DJD ankle, secondary headache, endogenous depression, cellulitis of her right forehead, and puncture wound to the left thumb.  (Tr. 197, 199, 201, 203, 205, 208, 209, 213).

The ALJ rejected Dr. Tucker's assessment that Plaintiff's condition is severe, with most physical activity precluded, (Tr. 215), since he believed from the Plaintiff's testimony that Dr. Tucker's assessment in that report was based solely on subjective complaints opined by the Plaintiff as he went through the form with her.  The court notes, as does the ALJ, that in the same assessment, Dr. Tucker stated that Plaintiff could ambulate effectively and occasionally lift up to 20 pounds and

carry up to 20 pounds.  (Tr. 216-217).

The court also believes that the ALJ considered all of the evidence relating to Plaintiff's subjective complaints of pain, which is required.  <u>Polaski v. Heckler</u>, 739 F.2d 1320, 1322 (8th Cir. 1984).  He considered Plaintiff's daily activities, the duration, frequency, and intensity of her pain, precipitating and aggravating factors; dosage, effectiveness, and side effects of her medication and functional restrictions.  <u>Id.</u>  A claimant's credibility is primarily a matter for the ALJ to decide.  <u>Edwards v. Barnhart</u>, 314 F.3d 964, 966 (8th Cir. 2003).  This court will not substitute its judgment for that of the trier of fact, <u>Brown v. Chater</u>, 87 F. 3d 963, 966 (8th Cir. 1996), nor will we disturb the decision of any ALJ who seriously considers, but for good reason explicitly discredits, a claimant's testimony of disabling pain.  <u>Reed v. Sullivan</u>, 988 F. 2d 812, 815 (8th Cir. 1993).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  <u>Id.</u>

It is clear from the ALJ's decision that he seriously considered Plaintiff's complaints of disabling pain and adequately evaluated the factors set forth in <u>Polaski.</u>  Although Plaintiff may suffer with some degree of pain, she has not established that she is unable to engage in any gainful activity.  <u>See</u> <u>Craig v. Apfel</u>, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). The court finds that there is substantial evidence to support the ALJ's findings that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible.

**B. Obesity**

As stated earlier, Plaintiff testified at the hearing that she was 5'7" tall and weighed 356 pounds.  (Tr. 15).  Obesity is "a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity."  20 C.F.R. Pt. 404, Subpt. P, App. 1.  When determining whether an individual with obesity has a listing-level impairment or combination of impairments, "and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity."  Id.  The ALJ stated that he considered the effects of the claimant's obesity in reducing the claimant's residual functional capacity.  (Tr. 43).

**C. Mental Impairment**

At the hearing before the ALJ, Plaintiff testified that she sought psychological treatment in 1997, when she was prescribed the generic for Prozac, which she still takes.  (Tr. 11).  She stated that she had no side effects from the medicine and that it was working well.  (Tr. 11).  When the ALJ asked her whether the Prozac worked well enough to allow her to work, Plaintiff replied, "I believe it's my back that is the main issue."  (Tr. 12).  In addition, Plaintiff testified that she has been diagnosed with depression, but sees Dr. Tucker twice a year and he spends only five to ten minutes talking with her about her psychological problems. (Tr. 19).  Plaintiff also stated that when she went to Dr. Tucker to have him fill out the Social Security assessment and evaluation, she remembered him only asking if she was still taking the medication for her depression.  (Tr. 21).

The ALJ found that Plaintiff's mental impairment does not meet or medically equal the criteria of listing 12.04.  (Tr. 43).  He considered whether the "paragraph B" criteria were satisfied

-10-

and found that because the Plaintiff's mental impairment did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria were not satisfied.  (Tr. 44).  The ALJ also considered whether the "paragraph C" criteria were satisfied and found the evidence failed to establish the presence of the "paragraph C" criteria.. (Tr. 44).

In Pratt v. Sullivan, 956 F.2d 830 (8th Cir. 1992), the Court addressed the sequential process for evaluating mental impairments as set out in 20 C.F.R. §404.1520a.

> The first step is to record pertinent signs, symptoms, and findings to determine if a mental impairment exists.  Id. §404.1520a(b)(1).  These are gleaned from a mental status exam or psychiatric history, id., and must be established by medical evidence consisting of signs, symptoms, and laboratory findings.  See id. §404.1508.  If a mental impairment is found, as it should have been in this case, (footnote omitted) the ALJ must then analyze whether certain medical findings relevant to ability to work are present or absent.  Id. §404.1520(b)(2).

> The procedure then requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas of function which are deemed essential to work.  Id. §404.1520a(b)(3).  Those areas are: activities of daily living; social functioning; concentration, persistence or pace; and deterioration or decompensation in work or work-like settings.  Id. ... After rating the degree of functional loss, the ALJ is to determine the severity of the mental impairments with reference to the ratings.  Id. §404.1520a©.  If the mental impairment is severe, then the ALJ must determine whether it meets or equals a listed mental disorder.  Id. §404.1520a(c)(2) (footnote omitted). ...If the claimant has a severe impairment, but the impairment neither meets or equals the listing, then the ALJ is to do a residual functional capacity assessment. (Footnote omitted).  See id. §404.1520a(c)(3).

Id. at 834-35.

It is clear from the record that Plaintiff takes the generic for Prozac for her depression and that it continues to work well.  "If an impairment can be controlled by treatment or medication, it cannot be considered disabling."  Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009), quoting from Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004).  It is also clear from the record that the ALJ

-11-

spent a great deal of time in his decision addressing all of the factors that are to be considered in determining whether Plaintiff's mental impairment meets or equals the criteria of listing 12.04. (Tr. 43-44). Accordingly, the court finds that the ALJ adequately considered and addressed Plaintiff's alleged mental impairment disability.[3]

## D. Residual Functional Capacity (RFC)

The ALJ has a duty to fully and fairly develop the record. It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC and to question a claimant in detail about her abilities. Although the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000), we have also stated that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). The record should "include some medical evidence that supports the ALJ's residual functional capacity finding." Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam). The ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). In evaluating a claimant's RFC, the ALJ is not limited to considering medical evidence, but is required to consider at least some supporting evidence from a professional. See 20 C.F.R. §404.1545(c); cf. Ford v. Secretary of Health and Human Services, 662 F. Supp. 954, 955-956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish

---

[3]The ALJ stated in his decision that the limitations identified in the "paragraph B" and "paragraph C" criteria are not a RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. He further noted that the mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment and that he has translated the "B" and"C" criteria findings into work-related functions in the RFC assessment discussed later in his decision. (Tr. 44).

how claimant's heart attacks affected his RFC.) (cited with approval in <u>Nevland</u>, 204 F. 3d at 858);

<u>Baldwin v. Barnhart</u>, 349 F.3d 549, 556 (8th Cir. 2003). The ALJ's duty is to determine a claimant's

RFC based on all relevant evidence in the record, including medical records, observations of treating

physicians and others, and the claimant's own description of his or her limitations. <u>Eichelberger v.

Barnhart</u>, 390 F.3d 584, 591 (8th Cir. 2004); <u>Guilliams v. Barnhart</u>, 393 F.3d 798, 801 (8th Cir. 2005).

The ALJ found, after carefully considering the entire record, that Plaintiff has the RFC to

perform sedentary work except she is only able to perform work where interpersonal contact is

incidental to the work performed (e.g. assembly work), the complexity of tasks is learned and

performed by rote with few variables and little judgment, and the supervision required is simple,

direct and concrete. (Tr. 44-45).[4] He further concluded that while Plaintiff alleges impairments that

completely prevent her from the ability to perform basic work activities, "the undersigned finds the

medical evidence, the claimant's statements concerning her impairments and evidence concerning

her activities of daily living provide overwhelming support for a determination that she is capable

of performing the work activities so long as she is limited as described above." (Tr. 48).

Plaintiff asserts that the ALJ did not base his determination on all of the relevant evidence

in the record in determining Plaintiff's RFC and that the ALJ based his findings on two one-time

examinations conducted by non-treating physicians.

Dr. LaGrand found that Plaintiff's ability to maintain appearance, be reliable, and function

---

[4]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and the other sedentary criteria are met." 20 C.F.R. §220.132(a).

independently is good and that her ability to deal with the public is fair. (Tr. 228). She also found that Plaintiff's ability to concentrate appears to be low average, and that from a psychological standpoint, based on her reported symptoms, history, and "performance on this exam, her ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers is estimated to be low average." (Tr. 229).

The ALJ found that Plaintiff's mental impairments impose a moderate limitation on her ability to perform activities of daily living and in her social functioning, and mild limitations on her ability to concentrate, persist and maintain pace in a manner consistent with the limitation addressed earlier in the opinion. (Tr. 47). It is true that the ALJ placed "significant weight" on the exam by Dr. LaGrand and the assessment performed by the State agency. (Tr. 47). The ALJ also rejected the opinions of Plaintiff's attending physician regarding Plaintiff's mental impairments "for much the same reason as the undersigned rejected his opinions on her physical limitations discussed above." (Tr. 48). As noted by the ALJ, the assessment of Plaintiff's physical and mental condition by Dr. Tucker appear to be based solely on subjective complaints opined by the Plaintiff as he went through the form with her. Although medical opinions of a treating physician are normally accorded substantial weight, those opinions must be supported by acceptable medical evidence and must not be inconsistent with other evidence on the record as a whole. Dixon v. Barnhart, 353 F.3d 602, 606 (8th Cir. 2003). In this case, there is no evidence that Dr. Tucker ran psychiatric tests for a mental impairment. See id. In addition, there is no evidence indicated in the record that Dr. Tucker is a psychiatric specialist. "The Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." Id., quoting Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). (Tr. 220).

-14-

See also Craig v. Apfel, 212 F.3d 433 (8th Cir. 2000) (noting that the claimant's treating physician who observed that claimant suffered from moderate depression was not licensed as a mental health professional and that the claimant's subsequent treatment records appeared to indicate that the problem was reasonably controllable).

In the present case, the ALJ considered the medical assessments of the medical records, Plaintiff's subjective complaints, the treating physician and medical consultants. Based upon the record as a whole, the court finds substantial evidence in the record to support the ALJ's RFC determination.

**E. Hypothetical Question**

In the ALJ's hypothetical question to the VE, he asked him to assume that an individual could occasionally lift and/or carry 10 pounds, frequently lift and/or carry less than 10 pounds, push and/or pull within the limits given for lifting and carrying, stand and/or walk with normal breaks for a total of at least two hours in an eight-hour workday, sit with normal breaks for a total of about six hours in an eight workday. (Tr. 26-27). He asked the VE to assume further that the claimant is limited to performing work where interpersonal contact is incidental to the work performed. "For example, assembly work with a complexity of tasks as learned and performed by rote with few variables and little judgment and the supervision required is simple, direct and concrete. Can you come up with a job?" (Tr. 26-27). In response, the VE testified that at the unskilled level he has a bench assembler. DOT 700.687-026. (Tr. 27). Although it does not appear that the ALJ included Plaintiff's obesity in the hypothetical question posed to the VE, the court does not find this to be error. Plaintiff did not explain how including her obesity would change the question to the VE. Robson v. Astrue, 526 F.3d 389, 392-393 (8th Cir. 2008).

-15-

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the court finds that the hypothetical the ALJ posed to the VE fully and adequately set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. See Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).   Accordingly, the court finds that the VE's testimony constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments do not preclude her from performing bench assembly work.

**Conclusion**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and recommends affirming the decision of the ALJ.  **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

Dated this 3rd day of November, 2009.

/s/ Erin L. Setser
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-16-